UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PATRICIA C.[1], o/b/o D.L.A., a minor | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:20-cv-03056-DLP-JRS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

## Order

Plaintiff Patricia C., on behalf of D.L.A,[2] a minor, requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of D.L.A.'s application for Social Security Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, the Court hereby **AFFIRMS** the ALJ's decision denying D.L.A. benefits.

**I.    Procedural History**

On February 16, 2017, D.L.A.'s application for Title XVI SSI benefits was protectively filed. (Dkt. Dkt. 14-2 at 16, R. 15; Dkt. 14-5 at 2-8, R. 177-83). D.L.A. alleged disability based on ADHD. (Dkt. 14-3 at 2, R. 56). The Social Security Administration ("SSA") denied D.L.A.'s claims initially on May 1, 2017, (Dkt. 14-3

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.
[2] In accordance with Federal Rule of Civil Procedure 5.2(a), the Court uses the initials of claimant because claimant is a minor.

1

at 2-12, R. 56-66; Dkt. 14-4 at 2-5, R. 79-82), and on reconsideration on December 4, 2017, (Dkt. 14-3 at 13-24, R. 67-78; Dkt. 14-4 at 9-11, R. 86-88). On December 26, 2017, D.L.A. filed a written request for a hearing, which was granted. (Dkt. 14-4 at 15-27, R. 92-104).

On February 5, 2020, Administrative Law Judge ("ALJ") Fredric Roberson conducted a hearing, where Patricia[3] and D.L.A. appeared in person. (Dkt. 14-2 at 30-56, R. 29-55). On March 3, 2020, ALJ Roberson issued an unfavorable decision finding that D.L.A. was not disabled. (Dkt. 12-2 at 21-36, R. 20-35). Patricia appealed the ALJ's decision and, on September 25, 2020, the Appeals Council denied the request for review, making the ALJ's decision final. (Dkt. 14-2 at 2, R. 1). Patricia now seeks judicial review of the ALJ's decision denying D.L.A. benefits pursuant to 42 U.S.C. § 1383(c)(3).

## II.     STANDARD OF REVIEW

"Social security disability benefits are designed for disabled workers, but low-income parents or guardians may obtain them on behalf of disabled children as well." *Keys v. Barnhart*, 347 F.3d 990, 991 (7th Cir. 2003). For a child to be considered disabled, it must be shown that the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

---

[3] On May 29, 2019, Patricia was given authorization by the Indiana Department of Child Services to secure SSI benefits for D.L.A. (Dkt. 14-5 at 10, R. 185).

"[S]ince disabled children generally do not have a work history, the structure of the disability program for them is necessarily different from that for adults, except in cases in which the child has a 'listed impairment,' that is, an impairment that would entitle the adult to disability benefits without any further inquiry into his ability to perform his past work or some other work; the child is treated the same in such a case." *Keys*, 347 F.3d at 991-92 (citing 20 C.F.R. § 416.924(d)). If the child is "not so seriously disabled as is implied by being found to have a listed impairment, then it must be determined whether [the child] is nevertheless severely limited in functioning in specified areas of life activity such as concentration and communication." *Keys*, 347 F.3d at 992.

To determine whether the child is disabled, the ALJ considers all relevant evidence and the combined effect of any impairments on the child's overall health and functioning. 20 C.F.R. § 416.924(a). The regulations set forth a three-step process for evaluating child disability claims. 20 C.F.R. § 416.924(a).

At Step One, if the child is doing substantial gainful activity, as defined by the regulations, the child is not disabled and the evaluation stops. 20 C.F.R. § 416.924(a)-(b). If the child is not doing substantial gainful activity, the evaluation proceeds to Step Two. 20 C.F.R. § 416.924(a).

At Step Two, the ALJ considers the child's physical or mental impairments to see if the child has an impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(a). If the impairment or impairments are not severe, the child is not disabled and the evaluation stops. 20 C.F.R. § 416.924(a). If the impairment or

3

impairments are severe, the evaluation proceeds to Step Three. 20 C.F.R. § 416.924(a).

At Step Three, the ALJ considers whether the child has an impairment or impairments that meets, medically equals, or functionally equals a listing. 20 C.F.R. § 416.924(a). If the child has such an impairment and it meets the duration requirement, the child is disabled. 20 C.F.R. § 416.924(a). If the child does not have such an impairment, or if it does not meet the duration requirement, the child is not disabled. 20 C.F.R. § 416.924(a).

A claimant's impairments will "meet" a listing when they satisfy all of the criteria for a given listing. 20 C.F.R. § 416.925(d). Impairments "medically equal" a listing if they are "at least equal in severity and duration" to a listing's criteria, meaning that a claimant's impairments "result in extreme[4] limitation of one, or marked[5] limitation of two" of four areas of mental functioning. 20 C.F.R. § 416.926(a); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2; *see also Crystal M. on behalf of D.R. v. Kijakazi*, No. 21 CV 2240, 2022 WL 1567061, at *1 (N.D. Ill. May 18, 2022). The four areas of mental functioning (also known as "Paragraph B criteria") are: (1) understand, remember, or apply information; (2) interact with

---

[4] A claimant has an "extreme" limitation when impairments "interfer[e] very seriously with your ability to independently, initiate, sustain, or complete activities," and extreme limitations are "more than marked." 20 C.F.R. § 416.926a(e)(3)(i); *see* 20 C.F.R. § 416.925(b)(2)(ii); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2.
[5] A "marked" limitation exists when impairments "interfer[e] seriously with your ability to independently initiate, sustain, or complete activities," and are "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i); *see* 20 C.F.R. § 416.925(b)(2)(ii); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2.

others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2.

Impairments "functionally equal" a listing if they are of "listing-level severity," meaning that they result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926(a); 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2; 20 C.F.R. § 416.926a(a).[6] The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 679 (7th Cir. 2010) (citing 20 C.F.R. § 416.926a); *see also Crystal M. on behalf of D.R.*, 2022 WL 1567061, at *1. The claimant bears the burden of proof at every step.

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of

---

[6] "Marked" and "extreme" limitations in the functional equivalence analysis mean the same thing as they do in the medical equivalence context, as discussed above. *See* 20 C.F.R §§ 416.926a(e); 416.925(b)(2)(ii).

5

evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether D.L.A. is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the

6

path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

D.L.A. was nine years old when an application for SSI benefits was filed on his behalf, alleging disability due to ADHD that began February 16, 2019. (Dkt. 14-3 at 2, R. 56; Dkt. 14-5 at 2, R. 177). At the time of his disability hearing, D.L.A. was twelve years old, in the fifth grade, and was in the process of being adopted by the Plaintiff Patricia, who is his grandmother. (Dkt. 14-2 at 33, R. 32).

#### B. ALJ Decision

In determining whether D.L.A. qualified for benefits under the Act, the ALJ employed the three-step sequential evaluation process set forth in 20 C.F.R. § 416.924 and concluded that D.L.A. was not disabled. (Dkt. 14-2 at 16-24, R. 15-23). At Step One, the ALJ found that D.L.A. had not engaged in substantial gainful activity since the application date. (Id. at 17, R. 16).

At Step Two, the ALJ found that D.L.A. has a severe medically determinable impairment of ADHD. (Dkt. 14-2 at 17, R. 16).

At Step Three, the ALJ found that D.L.A. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listings. (Dkt. 14-2 at 17-18, R. 16-17). In reaching this determination, the ALJ considered Listings 112.11. (Id.). The ALJ further determined that D.L.A. did not have an impairment or combination of impairments

that functionally equaled the severity of a listed impairment. (Dkt. 14-2 at 19-24, R. 18-23).

Here, the ALJ concluded that D.L.A. had less than a marked limitation in health and physical well-being, acquiring and using information, attending and completing tasks, interacting and relating with others, and ability to care for himself; and no limitation in moving about and manipulating objects. (Id.). The ALJ thus concluded that D.L.A. was not disabled. (Dkt. 14-2 at 24, R. 23).

## IV.  ANALYSIS

Patricia asserts that the ALJ's decision should be remanded because (1) the ALJ failed to adequately explain the Paragraph B criteria of the ALJ's Listing 112.11 determination, and (2) the ALJ cherry-picked evidence from the record when conducting her evaluation of D.L.A.'s subjective symptoms. (Dkt. 16 at 4).[7] The Court will address each argument in turn.

### A. Listing 112.11

At Step Three of the sequential process, the ALJ considered whether D.L.A.'s impairments or combination of impairments met or medically equaled Listing 112.11. (Dkt. 14-2 at 17, R. 16). Listing 112.11 (Neurodevelopmental disorders) requires:

> A. Medical documentation of the requirements of paragraph 1, 2, or 3:
>   1. One or both of the following:
>       a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
>       b. Hyperactive and impulsive behavior (for example,

---

[7] The paginated numbers provided at the bottom of Plaintiff's Opening Brief do not correspond with the paginated numbers of the brief on the Docket. The Undersigned has decided to cite to the page numbers as they appear in the header of the document throughout this Order.

>   > difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
>   > 2. Significant difficulties learning and using academic skills; or
>   > 3. Recurrent motor movement or vocalization."
> 
>   AND
>   B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (*see* 112.00F):
>   >   1. Understand, remember, or apply information (*see* 112.00E1).
>   >   2. Interact with others (*see* 112.00E2).
>   >   3. Concentrate, persist, or maintain pace (*see* 112.00E3).
>   >   4. Adapt or manage oneself (*see* 112.00E4).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 112.11.

Here, the ALJ set forth the criteria for the Listing and ultimately concluded that D.L.A. did not meet or medically equal the Listing because no medical evidence reported that D.L.A.'s symptoms met at least two of the severity level requirements for the "Paragraph B" criteria. (Dkt. 14-2 at 17-18, R. 16-17).

Patricia challenges the ALJ's "Paragraph B" consideration, arguing that by referring to only three pieces of evidence, the ALJ failed to adequately explain why D.L.A.'s impairments did not meet or medically equal a listed disorder. (Dkt. 16 at 21-24). Plaintiff specifically focuses her argument on the ALJ's alleged failure to support her finding that D.L.A. did not have "marked" limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. (Id.). In response, the Commissioner maintains, when reviewed as a whole, the ALJ's decision provides substantial evidence to support the ALJ's "Paragraph B" findings. (Dkt. 17 at 8-9). The Commissioner also contends this type of review is especially appropriate in this case, where the question of whether a child "medically equals" or "functionally equals" a listing relies considerably on the

9

evidence and functional areas. (Id.). In reply, Patricia argues that the Commissioner has offered post-hoc justifications, which are prohibited. (Dkt. 18).

As an initial matter, the Court agrees that there are several places in the Commissioner's response brief where the Commissioner provides reasoning not included in the ALJ's decision. (*See, e.g.*, Dkt. 17 at 10, 12-14, 16-18). The Court's review, however, is limited to the reasons articulated in the ALJ's decision, and post-hoc rationalizations submitted by the Commissioner are impermissible. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014) (attempts to bolster ALJ's position with post-hoc rationale are impermissible); *Phillips v. Astrue*, 413 F. App'x 878, 883 (7th Cir. 2010) ("We confine our review to the reasons offered by the ALJ and will not consider post-hoc rationalizations that the Commissioner provides to supplement the ALJ's assessment of the evidence."); *Villano v. Astrue*, No. 2:07 CV 187, 2009 WL 1803131, at *3 (N.D. Ind. June 23, 2009) (Commissioner's position limited to the ALJ's written decision, especially with respect to the required bridge between facts and conclusions, thus prohibiting post-hoc rationalization). Accordingly, the Court has not considered any post-hoc arguments offered by the Commissioner.

The Court will now evaluate the ALJ's findings in each broad area of function contested by the Plaintiff. The evaluation process for minors at Step Three involves overlapping reasoning. Analysis of "Paragraph B" criteria used to determine whether impairments "medically equal" a listing (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt

10

or manage oneself) requires an ALJ to ask largely the same questions about the same body of evidence when analyzing whether the child's "functionally equal" a listing (acquiring and using information; interacting and relating with others; attending and completing tasks; and caring for yourself). *See Buckhanon ex rel. J.H. v. Astrue*, 368 Fed. App'x 674, 678–79 (7th Cir. 2010) (ALJ's discussion of evidence of a minor's impairments, in parts of opinion separate from analysis of whether a claimant's impairments met or medically equaled a listing, adequately supported the ALJ's conclusion that impairments didn't meet or medically equal a listing); *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020) (discussing the similar five-step process for adult disability determinations and holding that an ALJ's discussion of a claimant's functional capacities "may doubly explain how the evidence shows that the claimant's impairment is not presumptively disabling under the pertinent listing"); *compare* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. B2 (discussing the four "Paragraph B" functional criteria for minors) *with* 20 C.F.R. § 416.926a (discussing the six domains of functioning). Because separately analyzing the four criteria for the "medically equal" and the six domains for the "functionally equal" is redundant, *Jeske*, 955 F.3d at 590, the Court will examine whether the ALJ's decision is supported jointly.

    i. *Interacting with Others*

Patricia argues that the ALJ "cherry picked" evidence supporting his finding of no marked difficulties in interacting with others, while ignoring evidence demonstrating that D.L.A. was defiant and argumentative; got in verbal and

11

physical altercations with others; had difficulty connecting with peers; and had serious problems with expressing his emotions appropriately, and respecting and obeying adults. (Dkt. 16 at 21). In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence and is consistent with the state agency consultants' opinions. (Dkt. 17 at 9-11). The Commissioner also contends that Plaintiff's citation to evidence from 2017 and from D.L.A.'s time in foster care are not indicative of the current state of D.L.A.'s limitations. (Dkt. 17 at 11-12).

Here, the ALJ found D.L.A. did not have "marked" limitations in interacting with others.[8] (Dkt. 14-2 at 18, R. 17). In making this determination, the ALJ relied on Brenda Lee Costello-Wells' October 30, 2019 therapy note which detailed good behavior at school, with no problems reported by D.L.A.'s teacher this year; no outbursts; and good relationships with peers, including playing video games with kids in the neighborhood and looking out for classmates who may be picked on. (Dkt. 14-2 at 18, R. 17; Dkt. 14-8 at 10, 417). The ALJ also acknowledged D.L.A.'s 2019-2020 Quarter 1 Report Card, in which D.L.A.'s Social Studies teacher noted that he frequently causes disruptions in class. (Dkt. 14-2 at 18, R. 17; Dkt. 14-6 at 72, R. 257). The ALJ noted D.L.A.'s Individualized Education Plan ("IEP"), which indicated that D.L.A. was polite and friendly with peers and teachers and that he worked well with his peers. (Dkt. 14-2 at 18, R. 17; Dkt. 14-6 at 74-86, R. 259-71).

---

[8] Interacting with others refers to the ability to relate to others age-appropriately at home and school, and in the community. Examples include cooperating with others; asking for help when needed; initiating and maintaining friendships; handling conflicts with others; and responding to requests, suggestions, criticism, correction, and challenges. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 112.00E2.

The August 21, 2019 IEP Case Conference Committee noted that while D.L.A. has had issues in the past with shutting down when he becomes frustrated, this behavior has not occurred since establishing a relationship with his teachers. (Id.). The Committee also noted that D.L.A.'s behavioral issues generally occurred when he did not take his medication. (Id.).

In keeping with Seventh Circuit precedent, *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-69 (7th Cir. 2010); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000), when read as a whole, the Court finds substantial evidence adequately supports the ALJ's finding that D.L.A. has less than "marked" limitations in interacting with others. Moreover, the ALJ's finding is consistent with that of the state agency reviewing physicians, Dr. Maura Clark and Dr. Donna Unversaw, who found that D.L.A.'s impairments did not meet or medically equal Listing 112.11. (Dkt. 14-2 at 24, R. 23; Dkt. 14-3 at 7-8, 19-20, R. 61-62, 73-74).

Further, contrary to Plaintiff's assertion, the ALJ *did* consider D.L.A.'s behavioral issues, including defiance, argumentativeness, distractibility, handling of emotions, friendships, and interactions with peers, and explained his reason for finding less than marked limitations, despite these behavioral issues. Specifically, the ALJ noted that in 2017 and 2018, D.L.A. struggled with obeying rules, his teachers, and his foster parents; accepting consequences for his actions; distractibility; expressing his emotions appropriately; and making and keeping friends. (Dkt. 14-2 at 20-22, R. 19-21; Dkt. 14-7 at 76-79, R. 348-51). The ALJ

13

recognized that during this same period, however, D.L.A. was cooperative, engaged, and exhibited no evidence of distractibility during his consultative examination. (Dkt. 14-2 at 21, R. 20; Dkt. 14-7 at 13-17, R. 285-89). The ALJ considered progress notes from D.L.A.'s 2019 therapy sessions in which D.L.A. was responsive to questions posed, demonstrated improvement in managing frustrations, interacted well with peers in group session, and exhibited overall progress in relating to others both in and outside of school. (Dkt. 14-2 at 22, R. 21; Dkt. 14-8). The ALJ also acknowledged D.L.A.'s continued struggle to express his thoughts and feelings appropriately as well as the fact that D.L.A.'s behavior waxed and waned with prescribed treatment. (Dkt. 14-2 at 22, R. 21; Dkt. 14-9 at 127, 189, 197, R. 813, 875, 883). The ALJ considered notations in D.L.A.'s IEP for the 2019-2020 school year, indicating D.L.A. was polite, friendly with his peers and teachers, working well with others, applying coping strategies to reduce anger responses, and no longer shutting down when frustrated. (Dkt. 14-2 at 22-23, R. 21-22; Dkt. 14-6 at 74-86, R.259-71). The ALJ also considered a January 13, 2020 progress note stating that D.L.A. was following instructions 85% of the time, but still had room for improvement with expressing feelings and using coping skills. (Dkt. 14-2 at 23, R. 22; Dkt. 14-9 at 257-62, R. 943-48).

      In short, the ALJ considered a full range of evidence concerning D.L.A.'s ability to interact with others. While the ALJ may not have cited every record the Plaintiff identifies in her brief, an ALJ need not address every piece of evidence in his decision, so long as he does not ignore a line of evidence that undermines the

conclusions he made and connects the evidence to his conclusions. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Kelly K. v. Kijakazi*, No. 4:20-cv-78-JVB-SLC, 2022 WL 538561, at *2 (N.D. Ind. Feb. 23, 2022). The ALJ has done that here. Accordingly, remand is not warranted on this issue.

    ii.    *Concentration, Persistence, and Pace*

Next, Patricia contends that the ALJ erred in finding no "marked" limitation in concentration, persistence, or pace.[9] (Dkt. 16 at 22). Patricia asserts that in reaching this conclusion, the ALJ failed to explain how an individual with problems of distractibility, sticking to a task to completion, and focusing for long periods of time, does not have "marked" limitations in concentration, persistence, or pace. (Id.). The Commissioner again contends the ALJ's decision is supported by substantial evidence and is consistent with the state agency reviewing physicians' opinions. (Dkt. 17 at 12-13). The Commissioner also argues that the evidence Plaintiff cites either is not indicative of the current state of D.L.A.'s limitations or actually supports the ALJ's reasoning. (Id. at 14-15).

In essence, Patricia is asking the Court to reweigh the evidence regarding concentration, persistence, and pace, and that is not the role of the Court on review. In analyzing D.L.A.'s ability to concentrate, persist, or maintain pace, the ALJ

---

[9] Concentration, persistence, or pace refers to the ability to focus attention on activities and stay on task age-appropriately. Examples include completing tasks in a timely manner, ignoring or avoiding distractions while engaged in an activity or task, changing activities without being disruptive, and engaging in an activity or task close to or with others without disrupting or distracting them. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 112.00E3.

15

acknowledged D.L.A.'s difficulty with attention and concentration, focus issues, and negative academic performance. (Dkt. 14-2 at 18, R. 17). The ALJ considered the fact that since receiving school-based counseling and taking his medications, D.L.A.'s focus and grades improved, his anger decreased, and he was able to complete assignments in a timelier manner without significant error. (Dkt. 14-2 at 18, R. 17; Dkt. 14-6 at 74-86, R.259-71; Dkt. 14-8 at 10, R. 417). The ALJ also relied on Dr. Javan Horwitz's April 2017 consultative examination, in which Dr. Horwitz noted that D.L.A. evidenced no distractibility. (Dkt. 14-2 at 18, R. 17; Dkt. 14-7 at 13-17, R. 285-89).

The Court finds the ALJ's "Paragraph B" analysis's sufficient to build a logical bridge between the evidence and his finding of no "marked" limitations with concentration, persistence, or pace. (Dkt. 14-2 at 18, R. 17). Moreover, the evidence cited by Plaintiff is not inconsistent with evidence the ALJ considered in reaching his determination. Accordingly, remand is not warranted on this issue.

    iii. *Adapting or Managing Oneself*

Patricia also contends that the ALJ's consideration of D.L.A.'s ability to adapt or manage himself is flawed. (Dkt. 16 at 22). In particular, Patricia maintains that there is no logical bridge because the ALJ failed to explain how an individual with temper tantrums, who acts out in a destructive manner, and who has been noted to have significant difficulties with executive functioning and adaptive skills does not have marked limitations in this functional area. (Dkt. 16 at 22). The Commissioner asserts that the evidence cited by the ALJ is sufficient for a reasonable mind to

accept it as supportive of the ALJ's decision. (Dkt. 17 at 16-17). The Commissioner also argues that the records Plaintiff cites are from D.L.A.'s time in foster care, and thus are not indicative of the degree of his symptomology now that he is in the care of Plaintiff. (Dkt. 17 at 17).

Here, the ALJ found that D.L.A. did not have "marked" limitations in adapting or managing himself.[10] (Dkt. 14-2 at 18, R. 17). In reaching this decision, the ALJ noted D.L.A.'s previous struggles with poor concentration, impulsivity, and defiance. (Dkt. 14-2 at 18, R. 17). The ALJ also explained that prior school records demonstrated that D.L.A. had a history of being disruptive in school. (Dkt. 14-2 at 18, R. 17). In evaluating the record and rendering her decision, however, the ALJ also noted D.L.A.'s progress over the years in being able to ask for help, participate in class and group therapy discussions, and controlling his behavior and not becoming overly disruptive. (Dkt. 14-2 at 18, R. 17). The ALJ also noted evidence indicating that D.L.A. was more friendly and attempted to complete tasks at school as requested. (Dkt. 14-2 at 18, R. 17).[11] Further, the ALJ relied on the Plaintiff's hearing testimony that D.L.A. was able to perform chores and manage his personal hygiene but that he needed reminders and some monitoring. (Dkt. 14-2 at 18, R. 17;

---

[10] Adapting or managing oneself refers to the ability to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings. Examples include responding to demands, adapting to changes, distinguishing acceptable and unacceptable performance in community or school-related activities, and maintaining personal hygiene. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 112.00E4.

[11] The Court notes that the Plaintiff correctly points out that there is no 18E record. (Dkt. 16 at 21). Nevertheless, as the ALJ acknowledged, there is evidence showing D.L.A. is friendly and attempts to complete tasks as requested. (*See, e.g.*, Dkt. 14-8 at 164, 211, 222, R. 571, 618, 629).

17

Dkt. 14-2 at 43-44, R. 42-43). The ALJ further noted that D.L.A. had transitioned to his new school without issue. (Dkt. 14-2 at 18, R. 17).

While the ALJ's decision does not explicitly reference D.L.A.'s temper tantrums, screaming, yelling, crying, hitting, banging his head against walls, or punching or kicking walls and doors in 2018 and 2019, the ALJ did not impermissibly cherry-pick evidence. Impermissible cherry-picking consists of "highlighting facts that support a finding of non-disability while ignoring evidence to the contrary." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020). Here, the ALJ considered D.L.A.'s history of disruptiveness. (Dkt. 14-2 at 18, R. 17). The ALJ acknowledged the 2017 questionnaire by D.L.A.'s second grade teacher, Ms. Jill Wolfgang, noting D.L.A.'s problems with asserting his emotional needs and responding appropriately to changes in his own mood. (Dkt. 14-2 at 21, R. 20; Dkt. 14-6 at 46-48, R. 231-33). The ALJ also noted D.L.A.'s issues in 2018 with self-destructive behavior, anger, emotional shutdown, and expressing his feelings. The ALJ also referenced the reports in the record that demonstrated that D.L.A. was referred to school-based counseling services to address these problems, including his difficulties with transitioning to foster care in 2018, and his history of abuse and neglect by his stepfather. (Dkt. 14-2 at 22, R. 21; Dkt. 14-9 at 231, 249-52, R. 917, 935-38). To keep this analysis in context, it is important to note that the ALJ considered therapy progress notes from 2018 through 2019 that demonstrated D.L.A.'s progress with managing his behavioral issues. (*See, e.g.*, Dkt. 14-2 at 22, R. 21; Dkt. 14-8 at 220, 224, 231, 241, R. 627, 631, 638, 648; Dkt. 14-9 at 29, 35, 53, 58,

18

172, 174, 185, 193, 202, 207, 211, 216, 219, 233, R. 715, 721, 739, 744, 858, 860, 871, 879, 888, 893, 897, 902, 905, 919). Moreover, D.L.A.'s August 2019 IEP Report indicated that while D.L.A. has had issues in the past with shutting down when he becomes frustrated, this behavior had not occurred since establishing a relationship with his teachers. (Dkt. 14-6 at 74-86, R. 259-71). The ALJ also noted Brenda Lee Costello-Wells' October 30, 2019 therapy note which detailed good behavior at school, with no problems reported by D.L.A.'s teacher since the start of the school year. (Dkt. 14-2 at 18, R. 17; Dkt. 14-8 at 10, 417).

Upon review of the reasons offered by the ALJ, the Court finds the ALJ's decision supported by the evidence. The Court is not permitted to reweigh the evidence. Because the ALJ has built a logical bridge between the evidence and his conclusion, the Court finds that remand is not warranted on this issue.

### B. Evaluation of Plaintiff's Symptoms

Second, Patricia argues that the ALJ's SSR 16-3p analysis of D.L.A.'s subjective symptoms is erroneous for the same reasons the ALJ's Listing analysis is erroneous – namely, that the ALJ "cherry-picked evidence." (Dkt. 16 at 24-28). However, as previously stated, the ALJ's decision demonstrates a careful consideration of the records evidencing bad symptoms and those evidencing progress in D.L.A.'s symptomology with prescribed medication and therapy.

Plaintiff also appears to argue that the ALJ's SSR 16-3p analysis of D.L.A.'s subjective symptoms is flawed because the ALJ "made no attempt to satisfy the requirements" of the Regulation and does not provide the "necessary and mandated

19

level of articulation" to support his reasoning. (Dkt. 16 at 27). Plaintiff, however, does not articulate what requirements the ALJ allegedly failed to satisfy. Plaintiff also does not explain how the ALJ's SSR 16-3p analysis, which spans nearly five pages and addresses D.L.A.'s medications, course of treatment, symptoms, activities of daily living, the objective medical evidence, medical opinions, and teachers' statements, (Dkt. 14-2 at 20-24, R. 23-19), fails to provide the "necessary and mandated level of articulation." The Seventh Circuit has held in a Social Security Disability context that "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)). Plaintiff has failed to establish that remand is warranted on this issue.

## V. CONCLUSION

For the reasons detailed herein, the Court **AFFIRMS** the ALJ's decision denying D.L.A. benefits. Final judgment will issue accordingly.

So ORDERED.

Date: 7/26/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email